WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| K. LAYNE MORRILL; and MORRILL & ARONSON, P.L.C., an Arizona professional limited liability company, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| SCOTT FINANCIAL CORP., et al., | ) ) |
| Defendants. | ) ) ) |

No. 2:14-cv-0922-HRH

O R D E R

Motions to Dismiss

Defendants move to dismiss plaintiffs' complaint.[1]  These motions are opposed.[2] Oral argument was requested but is not deemed necessary.

Background

Plaintiffs are K. Layne Morrill and Morrill & Aronson, P.L.C.  Defendants are Scott Financial Corporation; Bradley J. Scott; Kemp, Jones & Coulthard, LLP; Harrison, Kemp & Jones, Chartered; and J. Randall Jones.

---

[1]Docket Nos. 16 & 17.

[2]Docket Nos. 20 & 21.

Mr. Morrill is a resident of Arizona, and Morrill & Aronson is an Arizona professional liability company.[3] Scott Financial Corporation (SFC) is a North Dakota corporation, and Mr. Scott, who is a resident of North Dakota, is alleged to be "the sole officer, director and shareholder of SFC."[4] Kemp, Jones & Coulthard, LLP is a Nevada limited liability partnership.[5] Harrison, Kemp, & Jones, Chartered is a Nevada professional corporation.[6] Mr. Jones is alleged to be a citizen of Nevada.[7]

In December 2008, plaintiffs were retained to represent Gary Tharaldson, Club Vista Financial Services, L.L.C., and Tharaldson Motels, II, Inc. (collectively referred to herein as the Tharaldson entities) in connection with a failed Las Vegas, Nevada condominium project, the ManhattanWest project.[8] In January 2009, the Tharaldson entities filed suit in Nevada against Mr. Scott, SFC, and others for claims arising out of the failed ManhattanWest project.[9] Mr. Morrill was admitted pro hac vice in Nevada to appear in the

---

[3] Complaint at 3, ¶¶ 10-11, Docket No. 1.

[4] Id. at 3-4, ¶¶ 12-13.

[5] Id. at 4, ¶ 14.

[6] Id. at ¶ 15.

[7] Id. at ¶ 20.

[8] Id. at 5, ¶¶ 24-25 & 29.

[9] Id. at ¶ 24.

Tharaldson case.[10] The Jones defendants represented Mr. Scott and SFC in the Tharaldson case.[11] Plaintiffs alleged that at all relevant times, defendants knew that "[p]laintiffs maintained their law practice in Phoenix, Arizona...."[12]

During discovery in the Tharaldson case more than one million pages of documents were produced, forty fact witnesses were deposed, and six experts were deposed.[13] In addition, Mr. Morrill avers that during the two 1/2 years plaintiffs were involved in the Tharaldson case, approximately 480 documents, either pleadings or discovery documents, "were prepared by the Kemp Jones firm from its location in Las Vegas, Nevada and from there sent to the attorneys at Morrill & Aronson, PLC, in Arizona, by mail, courier, or email[.]"[14] Mr. Morrill also avers that "our various attorneys received a great number of phone calls that attorneys at Kemp Jones in Las Vegas, Nevada initiated to the attorneys of Morrill & Aronson, PLC in Arizona" and that he "would estimate that Kemp Jones

---

[10] Id. at ¶ 28.

[11] Id. at 1-2, ¶ 1.

[12] Id. at 6. ¶¶ 33 & 35.

[13] Id. at 2, ¶ 4.

[14] Declaration of K. Layne Morrill [etc.] at 1-2, ¶ 5, Exhibit B, Response to Defendants' Motions to Dismiss for Lack of Jurisdiction, Improper Venue, and for Transfer, Docket No. 20.

attorneys in Las Vegas, Nevada sent to attorneys at Morrill & Aronson, PLC in Phoenix, Arizona at least 1,625 emails...."[15]

Discovery in the Tharaldson case was to close on November 15, 2010.[16] Shortly before the close of discovery, defendants informed plaintiffs that they wanted to take the depositions of Mr. Morrill and Martin Aronson, the other named partner of plaintiff Morrill and Aronson.[17] Defendants contend that they did so because Mr. Morrill consistently listed himself as a witness[18] and because plaintiffs' clients testified that they did not know the factual basis of their claims but rather that they had relied on plaintiffs' investigation.[19] Plaintiffs allege that defendants sought to take Mr. Morrill's and Mr. Aronson's depositions as part of a "campaign to harm [p]laintiffs and drive a wedge between [p]laintiffs and their clients ..., which [d]efendants hoped, would cause the Tharaldson Entities to either settle or make a last-minute change of counsel before trial of the complex" Tharaldson case.[20]

---

[15] Id. at 2, ¶¶ 6-7.

[16] Complaint at 7, ¶ 43A, Docket No. 1.

[17] Id. at 7, ¶ 43B.

[18] Reporter's Transcript of Proceedings at 4:18-25 & 18:17-20:17, Exhibit C, Jones Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [etc.], Docket No. 17.

[19] See, e.g., Videotaped Deposition of Gary D. Tharaldson at 1156:14-1157:6, Exhibit D, Jones Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [etc.], Docket No. 17.

[20] Complaint at 2, ¶ 6, Docket No. 1.

Defendants filed applications in Nevada state court for the issuance of subpoenas outside the state of Nevada.[21] The applications were granted and a case was opened in Arizona so that an Arizona court could issue the subpoenas, which were served on Mr. Morrill and Mr. Aronson in Arizona.[22] Mr. Morrill and Mr. Aronson filed a motion in Arizona to quash the subpoenas, in which they argued that they

> were not involved in the underlying loan transactions; that they were not percipient witnesses to any of the relevant events leading up to the Tharaldson Proceeding; and that their knowledge of facts in the case was obtained solely through their investigations in anticipation of and during the litigation and from information obtained from their clients.[[23]]

Mr. Morrill and Mr. Aronson also argued that "[d]efendants' true purpose in taking the depositions of attorneys Morrill and Aronson was to pry into what [they] had learned about the case and to obtain privileged information and to attempt to drive a wedge between [p]laintiffs and their clients, ... for [d]efendants' perceived tactical advantage."[24]

---

[21]See Exhibits H & I, Jones Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [etc.], Docket No. 17.

[22]Complaint at 7, ¶ 43D, Docket No. 1.

[23]Id. at 8, ¶¶ 43G & 43H.

[24]Id. at ¶ 43I.

A hearing on the motion to quash was held in Maricopa County Superior Court on November 19, 2010, at which defendant Jones appeared.[25] The court granted the motion to quash,[26] but stated that it "want[ed] the minute entry to reflect that this Court does not intend in any way to suggest to Floyd A. Hale, Special Master [for the Tharaldson case in Nevada], what he ought to rule with regard to matters which will finally be briefed by him on December 3rd, 2010."[27]

Defendants filed the motion to quash and their response thereto with the Special Master assigned to the Tharaldson case in Nevada.[28] The Special Master recommended that Mr. Morrill and Mr. Aronson be deposed and the district court affirmed the recommendation and "allowed the depositions to delve into 'factual issues going to the basis of the [Tharaldson] case....'"[29] The Tharaldson entities filed a Petition for Writ with the Nevada Supreme Court, which heard argument on the petition on December 6, 2011.[30] On May 17, 2012, the Nevada Supreme Court

---

[25] Id. at ¶ 43K.

[26] Id.

[27] Reporter's Transcript of Proceedings at 38:22-39:1, Exhibit C, Jones Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [etc.], Docket No. 17.

[28] Complaint at 8, ¶ 43L, Docket No. 1.

[29] Id. at 9, ¶¶ 43M and 43O.

[30] Id. at 9-10, ¶¶ 43P and 43S.

> held that [Mr.] Morrill could be deposed only if [d]efendants prove that: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case."[31]

"After remand, [d]efendants never applied to the District Court to prove that the three (3) prerequisites for deposing [Mr.] Morrill and [Mr.] Aronson were met and their depositions were never taken."[32]

Meanwhile, on April 6, 2011, Mr. Scott and SFC, represented by the Jones defendants, filed, but did not serve, a complaint for defamation against plaintiffs' and Mr. Muckleroy, who was the Tharaldson entities' local Nevada counsel.[33] The Scott defendants alleged that Mr. Morrill and Mr. Muckleroy had made defamatory statements to Jim and Vicki Sheppard, who were "the preferred residential mortgage lenders on the ManhattanWest project" and with whom Mr. Morrill and Mr. Aronson had met during the discovery phase of the Tharaldson case.[34] On May 5, 2011, defendants served the defamation complaint upon plaintiffs in Arizona.[35] Plaintiffs allege that "[d]efendants were well aware that, under Nevada law, allegedly defamatory statements made by an attorney

---

[31]Id. at 13-14, ¶ 66.

[32]Id. at 14, ¶ 67.

[33]Id. at 10, ¶ 46.

[34]Id. at 6, ¶¶ 39 & 41; 10-11, ¶ 53.

[35]Id. at 10, ¶ 52.

in the course of a pending judicial proceeding are subject to a very broad privilege and cannot, as a matter of law, form the basis of a defamation claim."[36]  On June 7, 2011, plaintiffs requested that defendants voluntarily dismiss the defamation action, which defendants refused to do.[37]  On March 26, 2012, the Nevada court granted plaintiffs' motion for summary judgment and dismissed the defamation action.[38]  Defendants filed a notice of appeal on August 30, 2012.[39]  The Nevada Supreme Court affirmed the District Court's grant of summary judgment on January 21, 2014.[40]

On May 4, 2011, the Jones defendants "filed a bar grievance with the Nevada State Bar alleging that [Mr.] Morrill acted unethically and unprofessionally ... in his dealings with the Sheppards....."[41]  On June 26, 2012, the Nevada State Bar's Screening Panel "unanimously concluded that formal disciplinary proceedings would not be initiated against" Mr. Morrill and "the grievance was dismissed without prejudice."[42]

---

[36]Id. at 11, ¶ 55.

[37]Id. at 12, ¶¶ 59 & 60.

[38]Id. at 13, ¶ 65.

[39]Id. at 14, ¶ 71.

[40]Id. at 15, ¶ 74.

[41]Id. at 10, ¶ 48.

[42]Id. at 14, ¶ 69.

On June 2, 2011, the Tharaldson entities "retained new counsel" and plaintiffs allege that "[d]efendants' conduct ... was a factor that contributed to the Tharaldson [e]ntities' decision to retain new trial counsel...."[43]

On April 30, 2014, plaintiffs commenced this action. They assert four claims in their complaint. In their first claim for relief, they assert an abuse of process claim. Their second claim for relief is entitled "wrongful institution and continuation of attempts to depose Morrill and Aronson."[44] Their third claim for relief is entitled "wrongful institution and continuation of defamation action."[45] And, their fourth claim for relief is entitled "wrongful institution of state bar grievance."[46]

Pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6), defendants now move to dismiss plaintiffs' complaint.

## Discussion

Defendants first argue that plaintiffs' complaint is subject to dismissal because the court lacks personal jurisdiction over any of the defendants. "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of

---

[43] Id. at 12, ¶¶ 57-58.

[44] Id. at 19.

[45] Id. at 20.

[46] Id. at 21.

demonstrating that jurisdiction is appropriate." Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). "In such cases," the court "'only inquire[s] into whether [the plaintiff]'s pleadings and affidavits make a prima facie showing of personal jurisdiction.'" Id. (quoting Caruth v. Int'l Psycho-analytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." Id. (internal citation omitted).

"Personal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process." In re Western States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013) (footnote omitted). "A federal district court may exercise either general or specific personal jurisdiction." Id. Plaintiffs only contend that the court has specific personal jurisdiction over defendants.

> "When no federal statute specifically defines the extent of personal jurisdiction, [the court] look[s] to the law of the state where the district court sits—in this case, Arizona. Arizona's long-arm rule permits the exercise of personal jurisdiction to the extent allowed by the due process clause of the United States Constitution."

Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007) (quoting CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1110 (9th Cir. 2004)). "A court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). The court uses a three-prong test to determine whether a defendant has minimum contacts:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

Id. at 1057 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden of satisfying the first two prongs of the test." Schwarzenegger, 374 F.3d at 802. "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Id. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

A plaintiff may satisfy the first prong of the specific jurisdiction test "by demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum." Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672 (9th Cir. 2012). In the Ninth Circuit, "[a] purposeful availment analysis is most often used in suits sounding in contract", while "[i]n tort cases, [the court] typically inquire[s] whether a defendant purposefully direct[s] his activities at the forum state, applying an effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." Id. at 672-73 (internal citations omitted). Because plaintiffs have alleged torts, the purposeful direction analysis applies here.

"The 'purposeful direction' or 'effects' test ... 'requires that the defendant ... have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Id. at 673 (quoting Mavrix Photo, Inc. v. Brand Technologies, 647 F.3d 1218, 1228 (9th Cir. 2011)). "Thus, courts may exercise personal jurisdiction over a defendant who engages in an intentional act that causes harm in the forum state, even if that act takes place outside of the forum state." Id.

"[A]n intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Id. at 674. Plaintiffs have made a prima facie showing that defendants committed

numerous intentional acts, including the filing of the defamation case which was served on plaintiffs in Arizona, refusing to dismiss the defamation case after plaintiffs so requested, opposing Mr. Morrill's motion for summary judgment in the defamation case, and then appealing the district court's grant of summary judgment to the Nevada Supreme Court. Other intentional acts include the filing of the two civil actions in Arizona in order to secure the issuance of the deposition subpoenas, filing a response in the Arizona to the motion to quash the subpoenas, appearing at the Arizona hearing on the motion to quash, providing a copy of the motion to quash to the Nevada discovery master, opposing the appeal of the Special Master's decision, and opposing plaintiffs' Petition for Writ in the Nevada Supreme Court.

"[T]he 'express aiming' requirement is satisfied ... 'when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Wash. Shoe Co., 704 F.3d at 675 (quoting Dole Food Co., 303 F.3d at 1111. "However, the Supreme Court recently clarified that the plaintiff cannot be the only link between the defendant and the forum, but rather 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" GT Securities, Inc. v. Klastech GmbH, Case No. C–13–03090 JCS, 2014 WL 2928013, at *13 (N.D. Cal. June 27, 2014) (quoting Walden v. Fiore, 134 S. Ct. 1115, 1121–22 (2014)). The focus here is on the defendant's conduct because "it is the defendant, not the plaintiff or third

parties, who must create contacts with the forum State." Walden, 134 S. Ct. at 1126. "Mere injury to a forum resident is not a sufficient connection to the forum." Id. at 1125. Rather, "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." Id. at 1123. The defendant's conduct must connect the defendant with the forum state, not just to a plaintiff who lives in the forum state. GT Securities, Inc., 2014 WL 2928013, at *14 (citing Walden, 134 S. Ct. at 1124).

Plaintiffs argue that they have made a prima facie showing that defendants' intentional acts were expressly aimed at Arizona because they have alleged that defendants were aware of their Arizona residency. Plaintiffs also point out that defendants served the complaint in the defamation action and pleadings in connection with their attempt to depose plaintiffs in Arizona. Plaintiffs also contend that during the two 1/2 years that they represented the Tharaldson entities, defendants made dozens of phone calls to plaintiffs in Arizona, directed pleadings and discovery documents to plaintiffs in Arizona, and sent at least 1,600 emails to plaintiffs in Arizona. Plaintiffs insist that this is not a case in which the defendants did not undertake any conduct directed toward the forum state, but rather is a case in which numerous acts undertaken by defendants were expressly directed toward Arizona.

Plaintiffs, however, are focusing on their forum connections, and not defendants' connections. Defendants' only contact with Arizona was with plaintiffs as opposing counsel in litigation that plaintiffs themselves filed in Nevada. All the emails, mailings, and phone calls to which plaintiffs refer were a result of plaintiffs' contacts with Arizona, not defendants' contacts with Arizona. Pursuant to Walden, the required contacts must arise out of contacts that the "defendant himself creates with the forum state." Walden, 134 S. Ct. at 1125 (emphasis in original). Here, the only link between defendants and Arizona is plaintiffs, which is not sufficient. See FiLaser, Inc. v. Kinestral Technologies, Inc., Case No. 3:14–cv–00357–MO, 2014 WL 3546946, at *3 (D. Or. July 15, 2014) (quoting Walden, 134 S. Ct. at 1122) ("Plaintiff's choices to take telephone calls and receive mail in Portland are immaterial. '[T]he plaintiff cannot be the only link between the defendant and the forum.'"); Norcom v. Lease Finance Group, LLC, Case No. 3:13–CV–2252–KI, 2014 WL 2747652, at *3 (D. Or. June 17, 2014) (sending "notices, letters, and other documents to plaintiff's Oregon address" and "'garnish[ing]' plaintiff's bank account" not sufficient because action was directed at plaintiff, not State of Oregon).

Contrary to plaintiffs' contention, it is simply not sufficient that defendants knew that plaintiffs were residents of Arizona. Rather, defendants had to engage in some conduct that was expressly aimed at the State of Arizona. Here, there is no such conduct. While a case was filed in Arizona for the purpose of issuing Arizona subpoenas, the

discovery dispute arose out of the Tharaldson case which was being litigated in Nevada and which involved a Nevada real estate deal and parties domiciled in Nevada and North Dakota. At the time of the discovery dispute, an out-of-state party seeking discovery in Arizona had to file a civil action. Ariz. R. Civ. P. 30(h) (deleted August 30, 2012, effective January 1, 2013). Thus, this conduct was only "aimed" at Arizona coincidentally because the Tharaldson entities had hired Arizona lawyers. This conduct did not have "anything to do with [Arizona] itself[,]" Walden, 134 S. Ct. at 1125, but was merely aimed at plaintiffs, who happen to be residents of Arizona.

Because defendants' conduct was not expressly aimed at Arizona, plaintiffs have failed to satisfy prong one of the specific jurisdiction test. Thus, the court lacks personal jurisdiction over defendants and this case must be dismissed. Because the court dismisses for lack of personal jurisdiction, the court need not consider defendants' alternative venue and Rule 12(b)(6) arguments.

## Conclusion

Defendants' motions to dismiss[47] are granted. The clerk of court shall enter judgment dismissing plaintiffs' complaint without prejudice.

DATED at Anchorage, Alaska, this 30th day of September, 2014.

/s/ H. Russel Holland
United States District Judge

---

[47]Docket Nos. 16 & 17.